IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

CORNELIA WINCHESTER,

    Plaintiff,

v.

                                Case No.: _____

WALT DISNEY PARKS AND
RESORTS, U.S., INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Cornelia Winchester ("Plaintiff" or "Winchester"), by and through undersigned counsel, files this Complaint against Defendant, The Walt Disney Company ("Defendant" or "Disney"), and in support thereof states as follows:

## INTRODUCTION

1. This is an action for claims for remedies in violation and retaliation of the Family and Medical Leave Act of 1993 ("FMLA") and unlawful retaliation under the Florida Civil Rights Act ("FCRA") Title VII, with each count seeking damages in excess of $15,000, exclusive of interests, attorney fees and costs, as well as equitable relief, attorney fees, and court costs.

## JURISDICTION AND VENUE

2. Venue is proper because the parties reside, or are located, within the state of Florida and, specifically, within Orange County, Florida. Furthermore, the acts that give rise to this action occurred in Orlando, Florida.

## PARTIES

1

3. Plaintiff is an African-American woman who, at all times relevant to this action, was and is a resident of Orange County, Florida, and is a "person" and an employee entitled to bring such action, pursuant to the FMLA and Title VII under the FCRA.

4. At all times material hereto, Plaintiff served as a pallet-yard employee for Defendant in Osceola County, Florida.

5. Defendant The Walt Disney Company is the owner and operator of all pallet-yards located on The Walt Disney Company's property.

6. Defendant was and is a "person" and an "employer" pursuant to 42 U.S.C. §2000e(a) and (b), and an entity subject to liability under 42 U.S.C. §§1981.

7. At all material times, Defendant employed greater than twenty (20) employees.

8. At all relevant times, Plaintiff was an employee of Defendant.

## GENERAL ALLEGATIONS OF FACTS

9. Winchester became employed with The Walt Disney Company as a cast member in or about 1997.

10. Winchester worked for Disney for 22 years, until she was constructively discharged from her job in 2019.

11. Winchester worked at the Supply & Distribution Center, where she worked in the pallet yard receiving incoming trucks and sorting the pallets/trays.

12. In or about February 2018, Winchester was assigned to train foreman Richard Hackett after he was assigned to her area.

13. Within one week of completing the task of training Hackett, Winchester became the target of harassing management conduct that is not only contrary to Disney standards but are also discriminatory on their face.

2

14. This inappropriate conduct from management lasted for over a year and violated Title VII prohibitions against age, gender, and race, as well as sexual harassment and FMLA violations.

15. From May 2018 through her termination in Hackett began to speak to Winchester in an increasingly rude and aggressive manner, which included public shaming and humiliating of Winchester in front of other cast members.

16. This continued on a negative trend which eventually saw Hackett engaging in harassment and gender-based comments, which were also made in the presence of other cast members.

17. On one occasion, Hackett referred to all women as "whores."

18. Hackett also began to refer to Winchester specifically saying that "…she has so many guys," and that she's "everybody's girl."

19. Winchester was highly embarrassed and humiliated by the overt sexual implications made by Hackett which were made in front of her co-workers and even outside vendors who were present on many occasions.

20. As the Foreman, Hackett continually and openly berated, harassed, and humiliated Winchester to the point where other cast members felt comfortable making similar statements, such as "the pallet yard is no place for a black woman."

21. Other cast members began to ignore safety protocols as well and began to drive forklifts menacingly towards Winchester.

22. On one occasion, one of the forklift drivers drove into Winchester's work area without blowing the horn on the forklift and proceeded to scream in her face.

23. On or about April 3, 2019, Winchester verbally reported the abuse and harassment to supervisor Randy Webb, who was the proper channel of authority.

24. After learning of this report, Randy Webb appears to have engaged in retaliatory conduct by noting a discipline entry on Winchester's record on April 3, 2019, which was the same day she verbally reported Hackett for his harassment.

25. On or about April 4, 2019, Winchester then submitted a written statement regarding the harassment and discrimination she was suffering to the human resources department which received no response from HR

26. On April 16, 2019, Winchester had a meeting with Doug O'Connell and again verbally reported the harassment and discrimination, including a co-worker, "Carlos," who stated that the pallet yard was "not a place for a woman, especially a Black woman" without any consequences from the supervisors who heard it.

27. Subsequent to her report to Human Resources and/or Randy Webb, from April 2019 through June 2019, Carlos increased his harassment of Winchester.

28. Specifically, Carlos made several attempts to run over or into Winchester with his forklift and/or he feigned running over or into her, often angrily and loudly honking at her, in an attempt to frighten and intimidate her.

29. In May through June of 2019, Hackett began dumping pallets in Winchester's work area when he was supposed to take them elsewhere and could have taken them to the appropriate place.

30. This was done to intimidate and harass Winchester due to her race, gender, and/or age in an attempt to force her to resign.

31. Winchester reported this harassment to human resources department numerous times, including on June 3 and 4, 2019.

32. Winchester continued attempts to contact the human resources department by phone about the ongoing issue on multiple occasions without a return call. She then attempted to contact them in person, but Doug O'Connell informed Winchester that her written complaint was "kicked back" to the area management, who said that Winchester is the problem and that there are negative statements written by others about her.

33. During this time, Winchester had vacation requests, which she had submitted months in advance, denied by Randy Webb the day before without explanation.

34. Winchester was also taking intermittent FMLA during this time. Randy Webb subsequently denied Plaintiff overtime hours in retaliation of her taking approved FMLA leave.

35. Further, notwithstanding twenty-two years of seniority, her bid line was changed.

36. Management attempted to transfer the blame onto Winchester by claiming that she was the problem. This all started after she submitted her written statement to the human resources department on April 4, 2019.

37. On June 25, 2019, Winchester submitted a Charge of Discrimination to the Equal Opportunity Employment Commission, claiming Defendant was discriminating against her based on her race and gender.

38. After June 25, 2019, Winchester was consistently subjected to greater and unreasonable scrutiny and harsher performance standards than other non-Black, male counterparts.

5

39. Randy Webb (white/male), Supervisor, his boss, Doug O'Connell, and Rick Hackett (white/male) Foreman, began overtly taking notes and documenting my daily activities in an attempt to intimidate Winchester.

40. In September 2019, when confronted about participating in an intimidating and hostile work environment, Rick Hackett admitted having a meeting with Randy Webb, in which Randy Webb told Rick Hackett not to worry about anything as he had Rick Hackett's back.

41. Randy Webb continued to subject Winchester to targeted, harassing, and intimidating, and retaliatory terms and conditions of employment including denying or ignoring her as to available overtime and Holiday leave.

42. Winchester's non-Black, male counterparts were all provided these favorable conditions of employment.

43. Additionally, Randy Webb, Doug O'Connell, and the Distribution Team changed Winchester's days off and job duties to less desirable times and duties.

44. At various times, Rick Hackett unreasonably and unnecessarily raised his voice and aggressively yelled at Winchester for performing safety functions related to her employment and approached her on his equipment at an excessive speed to intimidate her.

45. He did not do this to Winchester's non-Black, male counterparts.

46. In January of 2019, Winchester was diagnosed with PTSD as a result of the work-related harassment.

47. In October 2019, Winchester was accused of hitting and breaking the door on a truck. Video surveillance showed she did not break the door, but she continued to be accused of doing so by Randy Webb, Doug O'Connell, and Ralph Spada, Jr.

48. On November 5, 2019, Winchester was suspended pending further investigation despite the fact the video exonerated her.

49. On that day, Winchester was escorted out of the building, but was not terminated. After a 3 and a half hour wait time, she was told that she was going on FMLA by Randy Webb's assistant. Winchester then informed Webb and his assistant that she was leaving FMLA. Winchester never reported back to work after that.

50. Defendant sent a text message to Plaintiff that they were going to pay her but failed to do so.

51. Winchester was the only female employee on the Supply & Distribution Team.

52. From 2018 through the date, she was constructively discharged in 2020, Plaintiff reported the ongoing harassment and discrimination to Defendant's human resources department as well as supervisors Randy Webb and Doug O'Connell.

53. The extensive and ongoing retaliation and harassment for her repeated reports to Human Resources and for submitting the EEOC charge would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

54. As a result of this severe and pervasive harassment, humiliation, retaliation, and blatant discrimination, Winchester suffered extensive emotional distress.

55. Winchester has retained the undersigned counsel and is obligated to pay her a fee.

### COMPLIANCE WITH PROCEDURAL REQUIREMENTS

56. Winchester timely filed a Charge of Discrimination with Equal Employment Opportunity Commission ("EEOC"), within 300 days of the adverse action complained of herein. A Copy of Winchester's discharge based upon race discrimination is attached hereto as **Exhibit A.**

7

## COUNT I: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – RETALIATION

57. This is a cause of action for unlawful retaliation as prohibited by the Florida Civil Rights Act ("FCRA"). Winchester accordingly adopts and realleges the allegations of Paragraphs 1 – 56 and fully sets forth herein.

58. At all times material to this action, Plaintiff was an employee and Defendant was her employer covered by and within the meaning of the FCRA.

59. Winchester was qualified for the position that she held with Defendant.

60. After Winchester's complaint to the EEOC about Defendant's race and sex discrimination and illegal termination of Winchester on the basis of Winchester's engaging in protected conduct, from which the termination emanated.

61. Winchester's EEOC charges constitute a protected activity because Winchester's complaints were concerning an unlawful activity of defendant.

62. Said protected activity was the proximate cause of Defendant's adverse employment action against Winchester, specifically termination.

63. The acts, failures to act, practices and policies of Defendant set forth above constitute retaliation in violation of FCRA.

64. As a direct and proximate result of the violations of the FCRA, as referred and cited herein, Winchester has lost all of the benefits and privileges of their employment and has been substantially injured in her career path.

65. As a direct and proximate result of Defendant's violations of the FCRA, as referenced and cite herein, and as a direct and proximate result of the prohibited acts perpetrated against

them, Winchester is entitled to all relief necessary to make them whole as provided by the FCRA.

66. As a direct and proximate result of Defendant's violations of the FCRA, Winchester has suffered damages, including, but not limited to a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

WHEREFORE, Plaintiff Cornelia Winchester demands trial by jury of all issues so triable as of right and: (a) injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts; (b) back pay and all other benefits, prerequisites and other compensation for employment which Winchester would have received had she maintained her position with Defendant, plus interest, including but not limited to lost salary and bonuses; (c) front pay, including raises, benefits, insurance costs, and retirement benefits; (d) reimbursement of all expenses and financial losses Winchester has incurred as a result of Defendant's actions; (e) declaratory relief declaring the acts and practices of Defendant to be in violation of the statute cited above; (f) reasonable attorney's fees plus costs; (g) compensatory damages; and (h) any other relief that this honorable court deems necessary.

**COUNT II: UNLAWFUL RACE DISCRIMINATION UNDER 42 USC §1981**

67. This is a cause of action for unlawful discrimination as prohibited under 42 U.S.C. §1981. Winchester accordingly adopts and realleges the allegations of Paragraphs 1 – 34, and fully sets forth herein.

68. The conduct complained of herein was taken under color of the laws of the State of Florida.

69. The persons who engaged in the conduct which Winchester complains (primarily Hackett) were of such positions and authority so that their acts may fairly be said to constitute the official expressions of Defendant's custom, policy, or usage.

70. Winchester was well-qualified to fulfill her job duties, possessing the experience, knowledge and qualifications required of the position of a pallet-yard forklift operator on behalf of Defendant.

71. As set forth above, Winchester was subjected to intentional and disparate treatment on the basis of race (black/African American), gender (female), and age (51 years of age) which adversely affected Winchester's terms, conditions, and privileges of employment.

72. The actions of Defendant, primarily through the actions of Hackett, was willful, wanton, intentional, and/or performed with malice and reckless indifference to Winchester's statutorily-protected rights in subjecting Winchester to the discriminatory acts set forth herein.

73. Intentional race discrimination is unlawful pursuant to 42 U.S.C. §1981. Defendant's refusal to schedule Winchester for overtime work on the basis of Plaintiff's race constitutes an unlawful discriminatory act within the meaning of 42 U.S.C. §1981.

74. At all times material hereto, Defendant, through its authorized agents and employees (including, but not limited to, Webb and O'Connell) were and are aware that race discrimination is prohibited under 42 U.S.C. §1981.

75. Nonetheless, Defendant through its authorized agents and supervisors Randy Webb and Doug O'Connell, engaged in conduct, including harassing and publicly humiliating Winchester, refusing to schedule Winchester for overtime hours, declining Winchester

previously approved vacation time off, and ultimately, involuntarily discharging Winchester in willful disregard of her rights, in violation of 42 U.S.C. §1981.

76. No legitimate business reasons existed under Defendant's policies, past practices, procedures and/or supervisory instructions to justify Winchester's involuntary termination with the actions and conduct against Plaintiff being a mere pretext for intentional race, gender, and age discrimination.

77. As a direct, proximate and foreseeable result of Defendant's actions, Winchester has suffered past and future pecuniary losses, emotional pain, suffering, embarrassment, humiliation, inconvenience and mental anguish, loss of enjoyment of life, loss of dignity, emotional distress and other non-pecuniary losses and intangible injuries, specifically through actions of Defendant's agents and employees, Winchester has been tangibly harmed concerning the terms and conditions of their employment, which damages include loss of pay and benefits; damage to their chosen career path, including the damage by being required to spend money in an effort to secure other employment; loss of retirement and pension benefits, damage to her reputation, damage by loss of dignity; as well as severe emotional anguish and distress.

WHEREFORE, Plaintiff Cornelia Winchester demands trial by jury of all issues so triable as of right and: (a) that she be awarded compensatory damages in an amount to be determined at trial; (b) that she be awarded prejudgment interest; (c) that she be awarded back pay and benefits between the date of Winchester's termination and the date of judgment in this matter; (d) that Winchester's be awarded front pay and benefits for a reasonable time within the discretion of this Court, in lieu of reimbursement; (e) that she be awarded costs of this action, including reasonable attorney's fees as a part of their costs, pursuant to 42 U.S.C. §1981; and (f) any other relief that

this honorable court deems necessary.

### COUNT III: UNLAWFUL RACE DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT

78. This is a cause of action for unlawful racial discrimination as prohibited under the FCRA. Winchester accordingly adopts and realleges the allegations of Paragraphs 1 – 34, and fully sets forth herein.

79. As previously set forth above, Winchester, an African-American female employee, was subjected to discrimination by virtue of disparate treatment as compared to her Caucasian/white peers, including, but not limited to the public humiliation and harassment, reduction of overtime hours, and denial of previously approved vacation time off.

80. Race discrimination is unlawful pursuant to the FCRA. Defendant's failure to ensure a non-discriminatory environment for Winchester to work in constitutes an unlawful discriminatory act within the meaning of the FCRA.

81. At all times material hereto, Defendant, through its authorized agents and supervisors Hackett, Webb. And O'Connell were and are aware that race-related discrimination is prohibited under the FCRA.

82. Nonetheless, Defendant, through its authorized agents and employees, engaged in conduct including, but not limited to the public humiliation and harassment, reduction of overtime hours, and denial of previously approved vacation time off, which shows a willful disregard of Winchester's rights, in violation of the FCRA.

83. No legitimate business reasons existed under Defendant's policies, past practices, procedures, and/or supervisory instructions to justify Winchester's involuntary

termination with the conduct she faced as being a mere pretext for intentional racial discrimination.

84. As a direct and proximate foreseeable result of Defendant's actions, Winchester has suffered past and future pecuniary losses, emotional pain, suffering, and embarrassment, humiliation, inconvenience and mental anguish, loss of enjoyment of life, loss of dignity, emotional distress and other non-pecuniary losses and intangible injuries, specifically through the actions of Defendant's agents and employees.

85. Winchester has been tangibly harmed concerning the terms and conditions of her employment, which damages include loss of pay and benefits, damages to Winchester's chosen career path, including damages required to spend money in order to find comparable employment, loss of retirement and personal benefits, damage to Winchester's reputation, both as a person and as a professional, damage by loss of dignity, as well as emotional anguish and distress.

WHEREFORE, Plaintiff Cornelia Winchester demands trial by jury of all issues so triable as of right and: (a) that she be awarded compensatory damages in in an amount to be determined at trial; (b) that she be awarded prejudgment interest; (c) that she be awarded back pay and benefits between the date of Winchester's termination and the date of judgment in this matter; (d) that Winchester's be awarded front pay and benefits for a reasonable time within the discretion of this Court, in lieu of reimbursement; (e) that she be awarded costs of this action, including reasonable attorney's fees as a part of their costs, pursuant to 42 U.S.C. §1981; and (f) any other relief that this honorable court deems necessary.

## COUNT IV: UNLAWFUL GENDER DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT

86. This is a cause of action for unlawful gender discrimination as prohibited under the FCRA. Winchester accordingly adopts and realleges the allegations of Paragraphs 1 – 34, and fully sets forth herein.

87. As previously set forth above, Winchester, an African-American female employee, was subjected to discrimination by virtue of disparate treatment as compared to her Caucasian/white male peers, including, but not limited to the public humiliation and harassment, reduction of overtime hours, and denial of previously approved vacation time off.

88. Gender discrimination is unlawful pursuant to the FCRA. Defendant's failure to ensure a non-discriminatory environment for Winchester to work in constitutes an unlawful discriminatory act within the meaning of the FCRA.

89. At all times material hereto, Defendant, through its authorized agents and supervisors Hackett, Webb, and O'Connell, were and are aware that sex/gender discrimination is prohibited under the FCRA.

90. Nonetheless, Defendant, through its authorized agents and supervisors O'Connell and Webb, engaged in conduct including, but not limited to the public humiliation and harassment, reduction of overtime hours, and denial of previously approved vacation time off, which shows a willful disregard of Winchester's rights, in violation of the FCRA.

91. No legitimate business reasons existed under Defendant's policies, past practices, procedures, and/or supervisory instructions to justify Winchester's involuntary termination with the conduct she faced as being a mere pretext for intentional gender discrimination.

92. As a direct and proximate foreseeable result of Defendant's actions, Winchester has suffered past and future pecuniary losses, emotional pain, suffering, and embarrassment, humiliation, inconvenience and mental anguish, loss of enjoyment of life, loss of dignity, emotional distress and other non-pecuniary losses and intangible injuries, specifically through the actions of Defendant's agents and employees.

93. Winchester has been tangibly harmed concerning the terms and conditions of her employment, which damages include loss of pay and benefits, damages to Winchester's chosen career path, including damages required to spend money in order to find comparable employment, loss of retirement and personal benefits, damage to Winchester's reputation, both as a person and as a professional, damage by loss of dignity, as well as emotional anguish and distress.

WHEREFORE, Plaintiff Cornelia Winchester demands trial by jury of all issues so triable as of right and: (a) that she be awarded compensatory damages in in an amount to be determined at trial; (b) that she be awarded prejudgment interest; (c) that she be awarded back pay and benefits between the date of Winchester's termination and the date of judgment in this matter; (d) that Winchester be awarded front pay and benefits for a reasonable time within the discretion of this Court, in lieu of reimbursement; (e) that she be awarded costs of this action, including reasonable attorney's fees as a part of their costs, pursuant to 42 U.S.C. §1981; and (f) any other relief that this honorable court deems necessary.

## COUNT V: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – RETALIATION

94. This is a cause of action for unlawful retaliation as prohibited under by the FRCA. Winchester accordingly adopts and re-alleges the allegations of paragraphs 1 through 34,

as if set forth more fully herein.

95. At all material times, Winchester was an employee and Defendant was Winchester's employer covered by and within the meaning of the FCRA.

96. Winchester was qualified for the positions she held with Defendant.

97. Following Winchester's complaint to the EEOC about Defendant's race and sex discrimination and illegal termination of Winchester on the basis of Winchester's engaging in protected conduct, from which the termination emanated.

98. Winchester's EEOC Charges constitute a protected activity because her complaints were concerning an unlawful activity of Defendant.

99. Said protected activity was the proximate cause of Defendant's adverse employment action against Winchester, specifically, constructive termination.

100. The acts, failures to act, practices, and policies of Defendant set forth above constitute retaliation in violation of the FCRA.

101. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, Winchester has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

102. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against them, Winchester is entitled to all relief necessary to make her whole as provided for under the FCRA

103. As a direct and proximate result of Defendant's actions, Winchester has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic

damages for physical injuries, mental and emotional distress.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

a) Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

b) Back pay and all other benefits, perquisites, and other compensation for employment which Winchester would have received had she maintained her position with Defendant, plus interest, including but not limited to lost salary and bonuses;

c) Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

d) Reimbursement of all expenses and financial losses Winchester has incurred as a result of Defendant's actions;

e) Declaratory relief declaring the acts and practices of Defendant to be in violation of the statute cited above;

f) Reasonable attorney's fees plus costs;

g) Compensatory damages, and;

h) Such other relief as this Court shall deem appropriate.

## COUNT VI
## RETALIATION IN VIOLATION OF THE FMLA

104. Winchester re-alleges and references each and every allegation contained in the preceding paragraphs 1 -34 and incorporates same as if set forth fully herein.

105. This is an action for damages as a result of Defendant's retaliatory treatment brought pursuant to Family Medical Leave Act, as amended. 42 U.S.C. § 12101 et seq. (FMLA).

17

106. At all times relevant to the facts alleged in this Complaint, Plaintiff suffered from one or more serious health conditions which required her to take time off from work as she was entitled to do pursuant to the FMLA.

107. Defendant retaliated against Plaintiff for exercising her FMLA rights in that it created a workplace so hostile that she had no choice but to resign.

108. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff s rights.

109. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which she is entitled to legal and injunctive relief.

WHEREFORE , Plaintiff requests that this Court:

a). Enter a judgment that Defendant retaliated against Plaintiff because she exercised her rights under the FMLA;

b). Enjoin and permanently restrain Defendant from further violations of the FMLA;

c). Direct Defendant to provide Plaintiff with back pay plus interest, pension rights and all benefits or, in the alternative, enter a judgment pursuant to 29 U.S.C. Section 2617(a)(l)(A)(i)(II) against Defendant and in favor of Plaintiff for the monetary losses she suffered as a direct result of Defendant's violation of the FMLA;

d). Award compensatory damages, including emotional distress damages;

e). Award front pay to Plaintiff;

f). Award liquidated damages to Plaintiff;

g). Award reasonable attorney's fees and costs to Plaintiff; and

h). Additional relief to which Plaintiff is entitled including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to further amend this Complaint, upon completion of her investigation and discovery, to assert any additional claims for relief against Defendant or other parties as may be warranted under the circumstances and as allowed by law.

Dated: April 1, 2022

/s/ *April S. Goodwin*
APRIL S. GOODWIN, ESQ.
FLORIDA BAR NO: 0502537
april@goodwin-firm.com
ANDREW J. SILVERS, ESQ.
FLORIDA BAR NO.: 1033222
andrew@goodwin-firm.com
The Goodwin Firm
801 West Bay Drive, Suite 715
Largo, FL 33770
Attorneys for Plaintiff
Phone: (727) 316.5333